# APPENDIX A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRIDGEPORT PAIN CONTROL CENTER, LTD., ) ) ) | |
| Plaintiff, ) ) | 08 C 1116 |
| v. ) ) | Judge Hibbler |
| CUTERA, INC., ) and JOHN DOES 1-10, ) ) | Magistrate Judge Brown |
| Defendants. ) | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (the "Agreement") is entered into by and between Bridgeport Pain Control Center, Ltd., its present and former parents, subsidiaries, affiliates, officers, employees, and agents ("Bridgeport" or "Plaintiff"), individually and on behalf of the Settlement Class (defined below), on the one hand, and Cutera, Inc., its present and former subsidiaries, affiliates, officers, employees, and agents ("Cutera" or "Defendant"), on the other hand. Bridgeport and Cutera are sometimes collectively referred to below as the "Parties."

## RECITALS

WHEREAS, litigation between the Parties entitled Bridgeport Pain Control Center, Ltd. v. Cutera, Inc., No. 08 C 1116 (the "Action"), is pending in the United States District Court for the Northern District of Illinois (the "Court");

WHEREAS, Bridgeport has alleged in the Action that Cutera violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., and Illinois common law (conversion)

by sending unsolicited advertisements to telephone facsimile machines without having an established business relationship or consent from the recipients;

WHEREAS, the Settlement Class is comprised of all persons or entities in the United States or Canada who on or after January 24, 2003, were sent or received one or more faxes or who subscribed to a telephone number to which one or more faxes were sent by or on behalf of Cutera promoting its goods or services;

WHEREAS, the Parties have agreed on a settlement which is in the best interests of all Parties, including the Settlement Class and all of its members;

WHEREAS, Bridgeport and its counsel, Edelman, Combs, Latturner & Goodwin, LLC ("Settlement Class Counsel"), have conducted a full investigation into the facts and law relating to the Action and the Settlement Class;

WHEREAS, after considering the benefits that the Settlement Class will receive under the Agreement, the fact that Cutera has indicated that if the Agreement is not approved it will continue to oppose the claims asserted in the Action, and the attendant risks, uncertainties and delays of litigation, Bridgeport and Settlement Class Counsel have concluded that it is fair, equitable and in the best interests of the Settlement Class to resolve the Released Claims (as defined below in paragraph 11) upon the terms and conditions in this Agreement;

WHEREAS, after considering the additional expense and delay which would result from the continuation of the Action, Cutera has determined that it is appropriate to resolve the Released Claims upon the terms and conditions in this Agreement;

WHEREAS, this Agreement has been negotiated among the Parties in good faith and at arm's length, and the Parties have agreed to resolve the Released Claims on the terms and conditions in this Agreement;

WHEREAS, the "Fax List" means: (a) all persons and entities identified in the Westfax detail summaries that Cutera retained and produced in discovery (including documents Bates-numbered Cutera 2293-47308); (b) all persons and entities with facsimile numbers in Cutera's salesforce.com database (Cutera's database for storing customer and lead information); and (c) all persons and entities with facsimile numbers in a rented fax list maintained by Cutera;

WHEREAS, it is understood and agreed that this Agreement does not constitute and shall not be deemed or construed as constituting an admission that Cutera has committed any of the acts alleged in the Action or violated any state, federal, local or common law or regulation, or that the Action could proceed as a class action on a contested basis,

NOW, THEREFORE, the Parties agree as follows:

## PROPOSED CLASS FOR SETTLEMENT PURPOSES

1. <u>Class Certification</u>. For purposes of this Agreement only, the Parties stipulate to the conditional certification of a class (the "Settlement Class") under Federal Rule of Civil Procedure 23(a) and (b)(3). The Settlement Class consists of all persons or entities in the United States or Canada who on or after January 24, 2003, were sent or received one or more faxes or who subscribed to a telephone number to which one or more faxes were sent by or on behalf of Cutera promoting its goods or services (the "Class Members"; the Class Members who do not opt out of this Agreement are referred to as "Settlement Class Members").

2. <u>Settlement Purposes Only</u>. Cutera agrees to certification of the Settlement Class only for the purpose of effectuating the Agreement. The certification of the Settlement Class shall be binding only with respect to the settlement of the Action. If the Agreement is terminated pursuant to its terms or is not approved in all material respects by the Court, or is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Class shall be vacated, the Action shall proceed as though the Settlement Class

had never been certified, and no reference to the Settlement Class shall be made for any purpose. The Parties agree that Cutera retains the right to oppose class certification if the Agreement is vacated or not effectuated for any reason and shall not be prejudiced in any way by the certification for settlement purposes.

## BENEFITS TO THE SETTLEMENT CLASS

3.     <u>Settlement Fund</u>.  Cutera shall make available a total of $950,000 (the "Settlement Fund") which shall be distributed as set forth in paragraph 9.

4.     <u>Class Notice</u>.  The costs of providing notice to the Settlement Class shall be paid by Cutera and will be an amount separate from the Settlement Fund.  The costs of administering the settlement shall also be paid by Cutera and are separate and distinct from the Settlement Fund.  Cutera shall not seek reimbursement or contribution for these costs and expenses from Bridgeport, Settlement Class Counsel, or the Settlement Class.

5.     <u>Attorneys' Fees and Expenses</u>.  Cutera will pay Settlement Class Counsel such amount of the Settlement Fund as the Court approves.  Settlement Class Counsel will seek, subject to Court approval, a total amount of not more than 30 percent of the Settlement Fund in attorneys' fees and costs for all work performed and all expenses incurred in connection with the Action, including taking calls from Settlement Class Members, posting the Notice and Claim Form on its website, and preparing documents in support of approval of the Agreement.  Cutera will not object to the payment of attorneys' fees and expenses and costs to Settlement Class Counsel for this amount.  Settlement Class Counsel shall not petition to receive attorneys' fees and expenses in excess of 30 percent of the Settlement Fund.  Cutera shall under no circumstances be liable to pay any attorneys' fees or expenses incurred by Settlement Class Counsel or any other plaintiff's counsel beyond any portion of the Settlement Fund that is

approved by the Court for payment of attorneys' fees and expenses. No interest shall accrue with respect to attorneys' fees and expenses if paid in accordance with this Agreement.

## DISTRIBUTION OF THE SETTLEMENT FUND

6.     Claim Process.   To receive compensation, a Settlement Class Member must complete and timely submit a claim form ("Claim Form," attached hereto as Exhibit 1) to Cutera or a Settlement Administrator ("Administrator") designated by Cutera.  A Claim Form will accompany the Class Notice as described in paragraph 13.  If the Agreement is vacated or not effectuated for any reason, no Class Member will be entitled to any payment from the Settlement Fund or any other compensation pursuant to this Agreement.

7.     Rejection of Claims.  A Claim Form shall be timely if the Administrator receives it within 150 days after the entry of the Order Granting Motion for Preliminary Approval of Settlement (the "Preliminary Approval Date").   Cutera or the Administrator shall have 21 days after that date to reject any claim which does not relate to a Settlement Class Member or which is otherwise invalid.  If Cutera or the Administrator determines that a claim does not relate to a Settlement Class Member or is untimely or otherwise invalid, it will send the Claim Form to Settlement Class Counsel.  If Cutera and Settlement Class Counsel disagree as to the validity of any claim, Settlement Class Counsel will bring the disputed claim before the Court.

8.     Valid Claims.  Each Settlement Class Member who timely and properly submits a Claim Form, executed under penalty of perjury by a Settlement Class Member or his, her or its legal representative, will be deemed to have submitted a "Valid Claim" and will receive a payment determined as set forth in paragraph 9 below, unless the Claim is rejected pursuant to paragraph 7.

9.     Distribution of the Settlement Fund.  The Settlement Fund shall be distributed as follows:

(a)     Thirty percent of the Settlement Fund or any lesser amount approved by the Court will be paid to Settlement Class Counsel in attorneys' fees and costs, subject to Court approval.

(b)     In addition to its compensation as a class member, Bridgeport will receive a $5,000 payment from the Settlement Fund for its services as class representative, subject to Court approval.

(c)     The remainder of the Settlement Fund, after deducting attorneys' fees and costs and compensation to the class representative as described in paragraphs 9(a) and (b), will be paid to Settlement Class Members who submit Valid Claims.

(d)     Each Settlement Class Member will receive an equal share of the Settlement Fund remaining after the deductions described in paragraphs 9(a) and (b), regardless of the number of faxes received by that Settlement Class Member, but in no event more than $500.

(e)     Cutera or the Administrator shall issue and mail checks to Settlement Class Members at the addresses identified on the Claim Form.  Only one settlement check will be issued for any single telephone number to which a fax was sent.  Settlement checks shall be made payable to all persons or entities who subscribed to the telephone number to which the fax was sent, as indicated on the Claim Form.

(f)     All settlement checks shall be void 90 days after issuance and shall so state on the check.

(g)     Any amounts remaining in the Settlement Fund 120 days after payment of all Valid Claims, the incentive award described in paragraph 9(b), and Settlement Class Counsel's attorneys' fees and costs shall be paid as *cy pres*, with the consent and approval of the

Court, to an established, charitable organization proposed by the Parties. The amount of money payable to *cy pres* recipients shall not exceed $100,000. Any amount remaining in the Settlement Fund in excess of $100,000 shall revert to Cutera. Defendant's Administrator to give any checks payable to the *cy pres* recipients to Settlement Class Counsel to distribute.

10.    <u>Payment of Claims and Attorneys' Fees</u>. Cutera or the Administrator shall issue checks and cause them to be mailed to Settlement Class Members within 14 days after the Effective Date (as defined in paragraph 18, below). The attorneys' fees and expenses shall likewise be mailed to Settlement Class Counsel within 14 days after the Effective Date.

## RELEASES

11.    <u>Releases</u>.    Upon the date of payments described in Paragraph 10 of the Agreement, in consideration for the payments described in this Agreement, Bridgeport and the Settlement Class Members, and to the extent the Settlement Class Member is not an individual, all of its present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors, predecessors-in-interest, and all of the aforementioned's present, former, and future officers, directors, employees, shareholders, attorneys, agents, independent contractors, and assigns; and to the extent the Settlement Class Member is an individual, any present, former, and future spouses, as well as the present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of each of them (all of the foregoing persons being the "Releasing Parties"), whether or not they submit claims, will forever release Cutera and its past and present attorneys, agents, employees, officers, directors, shareholders, affiliates, subsidiaries, divisions, predecessors-in-interest, insurers, insurers' counsel, successors and assigns, and all persons, natural or corporate, in privity with any of them (the "Released Parties") of and from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed

or unclaimed, suspected or unsuspected claims, demands, liabilities, causes of action, damages, attorneys' fees and obligations of any kind which are based on, arise from or relate in any way to Cutera's alleged unsolicited facsimile transmission of advertisements to the Releasing Parties, regardless of whether the facsimiles are identical to, similar to, or different from the design of the advertising facsimile attached as an exhibit to the Second Amended Complaint, and including all claims that were asserted or that could have been asserted in the Action (the "Released Claims").

12. <u>Release of Unknown Claims</u>. Without limiting the foregoing, the Released Claims extend to claims that the Releasing Parties do not know or suspect to exist in their favor at the time that the Agreement becomes effective, which, if known, might have affected their settlement with and release of the Released Parties, or might have affected their decision not to object to the Agreement. Without admitting that California law applies to this Agreement or that the releases provided by this Agreement are general releases, the Parties agree that, upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Judgment and Order Finally Approving the Settlement shall have, expressly waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Releasing Parties shall be deemed to have, and by operation of the Final Judgment and Order Finally Approving the Settlement shall have, expressly waived any and all provisions, rights and benefits conferred by any law or principle which is similar to California Civil Code § 1542. The Releasing Parties may later discover facts in addition to or different from those which they now believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties, upon the Effective Date, shall be deemed to have, and by operation of the

Final Judgment and Order Finally Approving the Settlement shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, which now exist or have ever existed, upon any theory whatsoever. The Releasing Parties shall be deemed by operation of the Final Judgment and Order Finally Approving the Settlement to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Agreement of which this release is a part.

## CLASS NOTICE

13. <u>Notice</u>. Within 60 days of the Preliminary Approval Date, Cutera or the Administrator will send by facsimile or cause to be sent by facsimile to each number on the Fax List (as defined above) the Notice (attached hereto as Exhibit 2) and a Claim Form. If any Notice and Claim Form sent by facsimile fails to transmit to a fax number on the Fax List, the Administrator will attempt to retransmit the Notice and Claim Form to that fax number no more than twice.

If necessary, Cutera or the Administrator will send notice by facsimile to each number on the Fax List in staggered batches, so that no more than 200,000 Notices shall be sent by facsimile in any fourteen-day period. Cutera or the Administrator shall wait fourteen days from the last day notice was sent to transmit the next group of Notices by facsimile.

Settlement Class Counsel will post the Notice, which may be non-materially modified or reformatted by agreement of the parties, and Claim Form on its website and will designate a telephone number to receive calls from Class Members which will contain a pre-recorded message summarizing the terms of the Agreement. Cutera will not bear any costs associated with these services.

Within 90 days of the Preliminary Approval date, Cutera or its agent will cause the Notice, which may be non-materially modified or reformatted by agreement of the parties, but

not the Claim Form, to be published once in The Aesthetic Guide and The Journal Of The American Medical Association. Each Notice published shall be at least ¼ of a page.

Class Members shall have 150 days from the Preliminary Approval Date to submit claim forms.

## SETTLEMENT APPROVAL PROCESS

14. <u>Preliminary Approval Order</u>. The Parties agree that Plaintiff will petition the Court after execution of the Agreement for an order preliminarily approving the Agreement substantially in the form of Exhibit 3. That order shall provide, among other things, that:

a. the settlement proposed in the Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

b. the notice regimen and Notice described in paragraph 13 fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Action;

c. the Settlement Class is certified on the condition that the certification shall be automatically vacated if the Agreement is terminated or is disapproved in whole or in part by the Court or any appellate court;

d. a final hearing on the settlement proposed in this Agreement shall be held before the Court to determine whether the Agreement is fair, reasonable, and adequate, and whether it should be approved by the Court; and

e. in further aid of the Court's jurisdiction to implement and enforce the proposed Agreement, Plaintiff and all Settlement Class Members shall be

enjoined from commencing or prosecuting any action asserting any of the Released Claims (as defined in the Agreement), either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located.

Nothing in this paragraph shall be construed to prevent a Settlement Class Member from presenting objections to the Court regarding the Agreement in accordance with paragraph 16.

15. <u>Right to Opt Out</u>. Any Class Member may elect to be excluded from the settlement and from the Settlement Class by opting out of the Settlement Class by the opt out deadline. The opt-out deadline shall be 150 days after the Preliminary Approval Date. Any person or entity who wishes to be excluded from the Settlement Class must send a written request for exclusion to Cutera's counsel and Settlement Class Counsel; the request must be received by Cutera's counsel and Settlement Class Counsel on or before the opt-out deadline. Any Class Member who opts out shall neither be bound by the Agreement nor entitled to any of the benefits of the Agreement. An opt-out notice must contain the following information: (a) the Class Member's name (or business name if the facsimile number was owned or controlled by a business), address, and telephone number; (b) the telephone number for the facsimile machine on which the Class Member was sent the fax; (c) the Class Member's signature or that of the Class Member's representative (such as a business's officer or manager); and (d) a statement that expressly states an intent of the Class Member not to participate in the Agreement and to waive all rights to the benefits of the Agreement. A request to opt out that does not include all of the foregoing information, or that is sent to an address other than those designated in the Class

Notice, or that is not received within the time specified shall be invalid and the persons or entities serving such a request shall be members of the Settlement Class and shall be bound as Settlement Class Members by the Agreement, if approved.

16. <u>Right to Object</u>. Any Settlement Class Member may object to the Agreement and appear in person or through counsel, at his, her or its own expense, at the final approval hearing to present any evidence or argument that may be proper or relevant as determined by the Court. The deadline to object shall be 150 days after the Preliminary Approval Date. No Settlement Class Member shall be heard and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be considered by the Court unless, no later than the objection deadline, the Settlement Class Member files with the Court and mails to Settlement Class Counsel and Cutera's counsel (at the addresses specified in the Notice) written objections that include: (a) the objector's name (or business name, if the objector is an entity), address and telephone number; (b) the telephone number for the facsimile machine on which the Settlement Class Member was sent the fax; (c) a statement of the objection to the Agreement; (d) an explanation of the legal and factual basis for the objection; and (e) documentation, if any, to support the objection. Any Settlement Class Member who fails to object in this manner shall be deemed to have waived his, her or its objections and forever be barred from making any such objections in the Action or any other action or proceeding.

17. <u>Order Finally Approving the Settlement</u>. If the Agreement is preliminarily approved by the Court, the Parties shall jointly request that the Court enter an order finally approving the settlement substantially in the form of Exhibit 4. The final approval order shall provide, among other things, that

a.     the Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class;

b.     the notice regimen and Notice described in paragraph 13 fully complies with Federal Rule of Civil Procedure 23 and the requirements of due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons or entities entitled to notice of the settlement of the Action;

c.     address Settlement Class Counsel's request for attorney's fees and costs and any incentive award to the Plaintiff;

d.     order Cutera to deliver sums equal to the Settlement Fund to Settlement Class Counsel within 14 days of entry of the Final Approval Order;

e.     within 10 days after receipt of the Settlement Fund, Plaintiff shall present an order dismissing the Action with prejudice and without costs and Plaintiff and all Settlement Class Members (other than those who opt out of the settlement as provided in this Agreement) will be permanently enjoined and barred from commencing or prosecuting any action asserting any of the Released Claims, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense or otherwise, in any local, state, or federal court, or in any agency or other authority of forum wherever located.;

f.     order Settlement Class Counsel to hold the Settlement Fund in the firm's escrow account until the Effective Date of the Settlement as defined in paragraph 18 below and then deliver the Settlement Fund, less attorney's fees and costs approved by the Court, to the

Administrator within 3 business days of the Effective Date, and in the event that the order of Final Approval is reversed or vacated on appeal or vacated or withdrawn by the District Court to return to the Settlement Fund to Cutera within 3 business days.

18. <u>Effective Date</u>. The Settlement Agreement shall be deemed effective on the latest of:

      a.    Thirty-five days after entry of an Order dismissing the Action with prejudice, if no pleadings are filed within the time limitations imposed by the Federal Rules of Civil and Appellate Procedure seeking appeal, review or rehearing of the Final Approval Order; or

      b.    If such pleadings are filed, ten days after the date upon which all appellate and other proceedings resulting from such pleadings (including the time for filing all petitions for rehearing and for appeal to the state courts of review of the United States Supreme Court) have been finally terminated in such a manner as to permit the Final Approval Order to take effect.

Cutera or its Administrator shall distribute the Settlement Fund in accordance with paragraphs 9 and 10 within 14 days of the Effective Date.

19. <u>Cutera's Option to Withdraw</u>. Cutera has the option to withdraw from the Agreement and render this Agreement void if (i) Plaintiff or Settlement Class Counsel materially breach any provision of the Agreement or the Preliminary Approval Order, or fail to fulfill any obligation hereunder or thereunder; (ii) the number of valid and timely requests for exclusion equals or exceeds 75, or (iii) any authorized officer of the United States or any state, or any representative of any local, state, or federal agency or branch of government, intervenes in the

14

Action or advises the Court in writing of opposition to the terms of the Agreement, or sues Defendant or initiates an enforcement action of any kind against Defendant.

20.  Effect of Withdrawal or Non-Approval.  If this Agreement is terminated in accordance with paragraph 19, the Parties shall be deemed to be in the same position as existed before the execution of this Agreement with the same rights that existed before the execution of this Agreement.  Any order provisionally certifying a Settlement Class pursuant to the Agreement shall be vacated *nunc pro tunc* and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to the Parties' rights, including but not limited to Cutera's right to oppose class certification.

## MISCELLANEOUS PROVISIONS

21.  No Admission of Liability.  Cutera enters into this Agreement to end all controversy and avoid the burden and expense of litigation, without in any way acknowledging fault or liability.  This Agreement may not be construed, in whole or in part, as an admission of fault or liability to any person by Cutera, or any of its agents or employees, in any manner or amount whatsoever, nor shall this Agreement or any part of it be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing of any kind by Cutera or any of its agents or employees.

22.  Advice of Counsel.  The Parties have relied upon the advice of counsel and have read and understand this Agreement.

23.  Waiver of Construction Against Drafter.  The Parties acknowledge that this Agreement reflects the joint drafting efforts of the Parties and their respective counsel and that any ambiguity that may be found in the Agreement shall not be construed against any party.

24. <u>Benefit of this Agreement</u>. This Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class Members, and each of their successors, predecessors, affiliates, heirs, executors and assigns.

25. <u>Entire Agreement</u>. All prior understandings and agreements between the Parties with respect to the subject matter of this Agreement are merged into this Agreement, which expresses the entire agreement and understanding of the Parties. This Agreement may be amended only by a written instrument executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Agreement and may not be amended, modified or changed orally.

26. <u>Counterparts</u>. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by fax or e-mail shall be deemed legal and binding for all purposes.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered by their duly authorized representatives.

**BRIDGEPORT PAIN CONTROL CENTER, LTD.,** individually and as representative of the Settlement Class

By: _____

Title: _____

Date: _____

APPROVED AS TO FORM:

_____

Daniel A. Edelman
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER &
    GOODWIN, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
*Settlement Class Counsel*

**CUTERA, INC.**

By: _____

Title: _____

Date: _____

APPROVED AS TO FORM:

_____

Eric S. Mattson
Thomas R. Heisler
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (FAX)

Ryan M. Sandrock
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA 94104
(415) 772-1219
(415) 772-7400 (FAX)
*Defendant's Counsel*

# EXHIBIT 1

## CLAIM FORM
### *BRIDGEPORT PAIN CONTROL CENTER, LTD.  v. CUTERA, INC.*
### (N.D. Ill. 08 C 1116)

**IMPORTANT:  THIS CLAIM FORM MUST BE FAXED OR POSTMARKED ON OR BEFORE _____, 2009 TO THE FOLLOWING:**

### SETTLEMENT ADMINISTRATOR
### P.O. BOX 487
### BIRMINGHAM, AL  35201-0487
### (205) 414-9394 (FAX)

Please print or type the following information:

NAME OF PERSON OR ENTITY THAT SUBCRIBED TO THE FAX LINE:

_____

CURRENT MAILING ADDRESS OF SUBSCRIBER OF FAX LINE:

ADDRESS:            _____

CITY/STATE:        _____

ZIP CODE:          _____

FAX NUMBER:        _____

I certify under penalty of perjury that I received one or more unsolicited fax advertisements from Cutera, Inc. on or after January 24, 2003 at the fax number listed above.

_____
(YOUR SIGNATURE)

_____
(DATE)

# EXHIBIT 2

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

### IF YOU RECEIVED AN UNSOLICITED ADVERTISING FAX FROM CUTERA, INC.,
### PLEASE READ THIS NOTICE CAREFULLY.

**To All Members of the Following Class:**

All persons or entities in the United States or Canada who on or after January 24, 2003, were sent or received one or more faxes or who subscribed to a telephone number to which one or more faxes were sent by or on behalf of Cutera, Inc. promoting its goods or services.

**I.      WHY IS THIS NOTICE BEING PUBLISHED?**
This notice is being published to let people know that they may be eligible to receive up to $500 under a proposed settlement of a class action lawsuit. The lawsuit is pending in federal court in Chicago, Illinois. The hearing to approve the settlement will be held on ___ 2009 at ___ a.m. before Judge Hibbler, Courtroom 1225 of the U.S. District Court, 219 South Dearborn Street, Chicago, IL 60604.

**II.     WHAT IS THE LAWSUIT ABOUT?**
Plaintiff Bridgeport Pain Control Center, Ltd. sued Cutera, alleging that it received an unsolicited facsimile advertisement from Cutera and that the sending of this fax violated federal and state laws, including the federal Telephone Consumer Protection Act. Bridgeport sought to represent a class of persons to whom Cutera sent unsolicited advertising facsimiles. Cutera denies these allegations but has agreed to settle to avoid the costs and uncertainties of litigation. Cutera will vigorously defend the lawsuit if the proposed settlement is not approved.

**III.    WHAT IS THE PROPOSED SETTLEMENT?**
The parties to the lawsuit have agreed to settle after extensive litigation and negotiations. Under the proposed settlement, Cutera has agreed to pay $950,000 into a Settlement Fund. The Settlement Fund will pay the fees of plaintiff's attorneys (no more than $285,000) and an award to the plaintiff ($5,000, in addition to its recovery as a class member). After these amounts are deducted, each Class Member who submits a valid claim will receive an equal share of the remaining funds, regardless of the number of faxes received by the Settlement Class Member, up to a maximum of $500. Your share of the settlement fund depends on how many Class Members submit claim forms. The exact number of Class Members is unknown, but is approximately 300,000.

**IV.     HOW DO I GET A PAYMENT?**
If you already submitted a claim form, you do not need to do anything else. If you have NOT submitted a claim form and you are part of the class described above, complete and submit the claim form to the **Settlement Administrator, P.O. Box 487, Birmingham, AL 35201-0487 or (205) 414-9394.** The claim form is also available on www.edcombs.com or by calling (800) 370-8552. Claim forms must be faxed or postmarked by DATE, 2009.

**V.      WHAT AM I GIVING UP?**
If the settlement becomes final, you will be releasing Cutera of any claims relating in any way to its sending of unsolicited advertisements by fax. This release is more fully explained in paragraphs 11 and 12 of the Settlement Agreement. You will need to reference case number 08 C 1611. The Settlement Agreement is available at the Clerk's Office, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604 during regular business hours

**VI.     EXCLUDING YOURSELF FROM THE SETTLEMENT.**
You will be a member of the Settlement Class unless you exclude yourself from the Settlement Class. You need not take any action to remain in the Settlement Class but you need to submit a Claim Form by DATE, 2009 to be eligible to receive a payment.

If you want to keep the right to sue Cutera over the legal issues in this case, then you must take steps to get out of the settlement. This is called asking to be excluded from – or sometimes called "opting out" of – the class. To exclude yourself from the settlement, you must send a letter saying that you want to be excluded from the Bridgeport Pain Control Center v. Cutera class action settlement. Be sure to include your name, address and telephone number, the number for the facsimile machine on which you were sent the fax advertisements, and your signature by DATE, 2009. Send the letter to **the Settlement Administrator and Class Counsel at the addresses provided herein in paragraphs IV and VIII respectively.** If you opt out, you will not receive any payment from the Settlement Fund, you cannot object to the Settlement and you will not be bound by anything that happens in this lawsuit.

**VII.    OBJECTING TO THE SETTLEMENT.**
Either on your own or through an attorney you hire, you can tell the Court that you don't agree with the settlement or some part of it. You must explain why you think the Court should not approve the settlement. To object, you must send a letter saying that you object to the settlement in Bridgeport Pain Control Center v. Cutera, 08 C 1611. Be sure to include your name, address and telephone number, the telephone number for the facsimile machine on which you were sent the fax advertisements, a statement of your objection, an explanation of the reasons you object to the settlement and documentation, if any, to support your objection by DATE, 2009. The Court will consider your views if you properly submit an objection on time.

Objecting is simply telling the Court that you don't like something about the Settlement. You can object ONLY if you stay in the class. If you exclude yourself, you have no basis to object because the case no longer affects you. Any objections or appearances must be filed with the Court and reference 08 C 1611 and sent to **the Settlement Administrator and Class Counsel at the addresses provided herein in paragraphs IV and VIII respectively.**

**VIII.   WHO REPRESENTS THE CLASS?**
The Court has appointed the following law firm to represent you and other members of the Settlement Class in this lawsuit:

**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 917-4504      (312) 419-0379 (FAX)
www.edcombs.com

This firm represents your interests in this lawsuit. You may contact them with any questions that you have about the lawsuit or the Settlement. You may also hire your own attorney at your own cost.

**IX.     CAN I GET MORE INFORMATION?**
This notice is intended only as a summary of the lawsuit and proposed settlement. It is not a complete statement of the lawsuit or the proposed settlement. You may inspect the pleadings and other papers (including the proposed Settlement Agreement) that have been filed in 08 C 1611, at the office of the Clerk of the Court, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn St., Chicago, IL 60604. If you have questions about this notice or the proposed settlement, you may contact Settlement Class Counsel at the address and phone number listed above. **DO NOT CONTACT THE COURT OR DEFENDANT FOR INFORMATION.**

**BY ORDER OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.**

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGEPORT PAIN CONTROL CENTER, LTD., | ) ) ) | |
| Plaintiff, | ) ) | 08 C 1116 |
| vs. | ) ) | Judge Hibbler |
| CUTERA, INC., and JOHN DOES 1-10, | ) ) ) | Magistrate Judge Brown |
| Defendants. | ) ) | |

## ORDER GRANTING MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT

The Motion of plaintiff Bridgeport Pain Control Center, Ltd. ("Bridgeport" or "Plaintiff")
for Preliminary Approval of Class Action Settlement and Notice to the Class with defendant
Cutera, Inc. ("Cutera" or "Defendant") came on for hearing on _____, 2009.

Having considered Plaintiff's moving papers, the signed Settlement Agreement and
Release (the "Agreement") attached as Appendix A to Plaintiff's Motion for Preliminary
Approval, and all other evidence submitted concerning Plaintiff's motion, and after hearing
argument of the parties, due notice having been given and the Court being duly advised in the
premises, the Court hereby finds that:

(a)     The settlement proposed in the Agreement has been negotiated in good faith at
arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best
interests of the Settlement Class (as defined below).

(b)     The Class Notice (as described in the Agreement) fully complies with Federal
Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under

the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Lawsuit.

(c)     With respect to the Settlement Class, this Court finds that, for settlement purposes only, certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3). This Court finds that members of the Settlement Class will receive notice of the settlement through the notice program described below.

(d)     This Court finds that the Class Notice described below constitutes the best notice practicable under the circumstances and fully complies with Federal Rule of Civil Procedure 23(c)(2)(B).

**IT IS THEREFORE ORDERED THAT:**

1.     The settlement proposed in the Agreement has been negotiated in good faith at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the factual, legal, practical and procedural considerations raised by this case.

2.     The following class (the "Settlement Class") is preliminarily certified solely for the purpose of Settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> all persons or entities in the United States or Canada who on or after January 24, 2003, were sent or received one or more faxes or who subscribed to a telephone number to which one or more faxes were sent by or on behalf of Cutera, Inc. promoting its goods or services.

3.     The Court hereby preliminarily appoints Plaintiff Bridgeport Pain Control Center, Ltd. as representative of the Settlement Class and finds that it meets the requirements of Fed. R. Civ. P. 23.

2

4.     The Court hereby preliminarily appoints the following lawyers as counsel to the Settlement Class and finds that counsel meet the requirements of Fed. R. Civ. P. 23: Daniel A. Edelman and Heather A. Kolbus of Edelman, Combs, Latturner and Goodwin, LLC, 120 S. LaSalle Street, 18th Floor, Chicago, Illinois 60603.

5.     In the event that (i) the Agreement is terminated pursuant to its terms; (ii) Defendant withdraws from the Settlement Agreement; (iii) the Agreement, the Preliminary Approval Order, and the Final Judgment and Order do not for any reason become effective; or (iv) the Agreement, Preliminary Approval Order, and Final Judgment and Order are reversed, vacated, or modified in any material respect, then (a) any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated, including without limitation the certification of the Settlement Class and all other relevant portions of this Order, (b) this case shall proceed as though the Settlement Class had never been certified, and (c) no reference to the prior Settlement Class, or any documents related thereto, shall be made for any purpose. If the settlement does not become final in accordance with the terms of the Agreement, then the Final Judgment and Order shall be void and shall be deemed vacated. Defendant retains the right to oppose class certification if the settlement is vacated, and the doctrines of res judicata or collateral estoppel shall not be applied.

6.     Defendant or the Administrator shall give notice of the settlement, its terms, the right to opt out, appear, and the right to object to the settlement as set forth in the Agreement. The Agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Fed. R. Civ. P. 23. That plan is approved and adopted.

7.   The form of notice that Defendant or its agent will provide is attached as Exhibit 2 to the Agreement. Within 60 days of the date of this Order, Defendant or its agent will send the notice substantially in the form of Exhibit 2 and a claim form substantially in the form of Exhibit 1 by facsimile to each Class Member identified on the Fax List. Within 90 days of the date of this Order, Defendant or the Administrator will also provide supplemental notice by publishing a notice substantially in the form of Exhibit 2, at least ¼ page in size, once in each of the following publications: The Aesthetic Guide and the Journal of the American Medical Association. Settlement Class Counsel will also publish Exhibit 2, and the Claim Form (Exhibit 1), on www.edcombs.com. This combined notice program fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit. The Court finds and orders that no other notice is necessary. Defendant's Administrator and/or Plaintiff's Counsel shall provide the Notice and/or the Claim Form to those Class Members who call to request it.

8.   To effectuate the Settlement, the Court hereby establishes the following deadlines and dates for the acts and events set forth in the Agreement and directs that parties to incorporate the deadlines and dates in the Notice and Claim Form:

(a)   Claim Forms shall be returned by Class Members to Defendant or its agent by fax or mail postmarked on or before DATE, 2009. Claims not submitted by this date shall be barred.

(b)   Objections of Class Members or any appearance of an attorney on behalf of a Class Member shall be filed in this Court and served by fax or mail postmarked to Class Counsel and Defendant's counsel on or before DATE, 2009 or shall be forever

4

barred. Each objection must contain the following information: (a) the objector's name (or business name, if the objector is an entity), address and telephone number; (b) the telephone number for the facsimile machine on which the Settlement Class Member was sent the fax; (c) a statement of the objection to the Agreement; (d) an explanation of the legal and factual basis for the objection; and (e) documentation, if any, to support the objection.

(c)    All memoranda filed by any Class Member in connection with objections must be filed in this Court and served on Plaintiff's Counsel and counsel for Defendant by fax or mail postmarked on or before DATE, 2009, or shall be forever barred.

(d)    Requests by any Class Member to opt out of the Settlement must be faxed or mailed postmarked to Defendant or its agent on or before DATE, 2009, or shall be forever barred. A notice of intention to opt out must contain the following information: (a) the Class Member's name, address, and telephone number; (b) the telephone number for the facsimile machine on which the Class Member was sent the fax; (c) the Class Member's signature or that of the Class Member's representative (such as a business's officer or manager); and (d) a statement that expressly states an intent of the Class Member not to participate in the Agreement and to waive all rights to the benefits of the Agreement.

9.    Defendant or its Administrator shall  file an affidavit (including tear sheets where necessary) regarding notice by DATE, 2009.

10.    Defendant shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) no later than DATE, 2009.

11.     Settlement Class Counsel shall file with the Court a list of the individual members of the Settlement Class seeking exclusion by _____.

12.     The final hearing to determine whether the settlement is fair, reasonable, and adequate, and whether it should be approved by the Court, will be conducted on _____, 2009 at ____.

13.     All papers in support of or in opposition to the Agreement shall be filed DATE, 2009. Any responses to objections, shall be filed with the Court on or before _____. There shall be no replies from objectors.

14.     In the event that the settlement does not become final and the Effective Date does not occur in accordance with the terms of the Agreement, then this Order shall be void and shall be deemed vacated.

15.     The Court may, for good cause, extend any of the deadlines set forth in this Order or adjourn or continue the final approval hearing without further notice to the Settlement Class.

Dated: _____          _____
                                     Judge

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRIDGEPORT PAIN CONTROL CENTER, LTD., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) 08 C 1116 ) |
| | ) Judge Hibbler |
| CUTERA, INC., and JOHN DOES 1-10, | ) ) Magistrate Judge Brown |
| Defendants. | ) ) |

## <u>ORDER FINALLY APPROVING THE SETTLEMENT</u>

On _____, 2009, this Court entered an order granting preliminary approval (the "Preliminary Approval Order") of the settlement reached between Plaintiff, on its own behalf and on behalf of the Settlement Class (as defined below), and Defendant, as memorialized in the Settlement Agreement (the "Agreement").

On _____, 2009 the Court held a fairness hearing (the "Fairness Hearing"), for which members of the Settlement Class had been given appropriate notice and were invited, including those with any objections. An opportunity to be heard was given to all persons requesting to be heard in accordance with the Preliminary Approval Order. Having considered the Parties' Agreement, Plaintiff's Memorandum in Support of Final Approval of the Class Action Settlement and all other evidence submitted,

**IT IS HEREBY ORDERED THAT:**

1.      This Court has jurisdiction over Plaintiff, Defendant, members of the Settlement Class, and the claims asserted in the Lawsuit.

2.     The Settlement Agreement was entered into in good faith following arm's length negotiations and is non-collusive.

3.     This Court grants final approval of the Agreement including but not limited to the releases in the Agreement, and finds that it is in all respects fair, reasonable, and in the best interest of the Settlement Class. Any objections which were filed, timely or otherwise, have been considered and are overruled. Therefore, all members of the Settlement Class who have not opted out (*i.e.*, all members of the Settlement Class other than those listed on Exhibit B to this order) are bound by this Final Judgment and Order Finally Approving the Settlement and the Settlement Agreement.

## Class Certification

4.     The previously certified class (the "Settlement Class") is now finally certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> All persons or entities in the United States or Canada who on or after January 24, 2003, were sent or received one or more faxes or who subscribed to a telephone number to which one or more faxes were sent by or on behalf of Cutera, Inc. promoting its goods or services.

5.     The Court finds that certification solely for purposes of Settlement is appropriate in that (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law and/or fact common to the class that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff, Bridgeport Pain Control Center, Ltd., will fairly and adequately protect the interests of the class; (e) Edelman, Combs, Latturner & Goodwin, LLC is adequate class counsel; and (f) a class action is the superior method for the fair and efficient adjudication of this controversy.

6.     Bridgeport Pain Control Center, Ltd. is designated as representative of the Settlement Class.

7.     Daniel A. Edelman and Heather A. Kolbus of Edelman, Combs, Latturner and Goodwin, LLC are appointed as Settlement Class Counsel.

8.     The certification of the Settlement Class is non-precedential and without prejudice to Defendant's rights if the Settlement Agreement and this Final Judgment and Order Finally Approving the Settlement do not become effective as provided in the Settlement Agreement.

## Class Notice

9.     The Class Notice (as described in the Agreement) fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Lawsuit. The Court has approved the forms of notice to the Settlement Class.

10.     With respect to the Settlement Class, this Court finds that certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3). Notice was given by facsimile to each Settlement Class Member whose identity could be identified through reasonable effort. Settlement Class Counsel also posted the Notice on their firm's website, www.edcombs.com. In addition, publication notice was provided in The Aesthetic Guide on _____; and in The Journal of the American Medical Association on _____. This Court finds that these forms of Class Notice fully comply with the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and are due and

3

sufficient notice to all persons entitled to notice of the settlement of this lawsuit. A total of

Class Members submitted valid and timely claim forms.

### Objections and Opt-Outs

11.    A total of _____ objections were filed by Class Members. A list of the persons

or entities that filed objections is attached as Exhibit A. The Court has considered each of these

objections carefully and has overruled them. None of these objections raises valid concerns

about the Settlement Agreement.

12.    A total of _____ persons or entities have validly requested exclusion from the

Settlement Class. A list of the persons or entities that have validly opted out of the settlement is

attached as Exhibit B.

### Class Compensation

13.    In accordance with the terms of the Agreement, Defendant shall pay or cause to

be paid the Settlement Amount set forth in paragraph 3 of the Agreement pursuant to the

procedures set forth in paragraphs 9 and 10 of the Agreement.

### Releases

14.    Upon the payments described in paragraphs 9 and 10 of the Agreement, Plaintiff

and each Settlement Class member shall be deemed to have granted the releases set forth in

paragraphs 11 and 12 of the Agreement.

### Award of Attorneys' Fees, Costs, and Incentive Award

15.    The Court has considered Settlement Class Counsel's application for attorneys'

fees and costs. The Court awards $_____, and finds this amount of fees and costs to be

fair and reasonable, and finds that the costs are sufficiently supported. This amount shall be paid

from the Settlement Fund.

16.     The Court grants Settlement Class Counsel's request for an incentive award to the class representative and awards $_____ to Bridgeport Pain Control Center, Ltd.  The Court finds that this payment is justified by the class representative's service to the Settlement Class. These payments shall be made from the Settlement Amount.

**Other Provisions**

17.     The Parties to the Agreement shall carry out their respective obligations thereunder.

18.     In the event that (i) the Agreement is terminated pursuant to its terms; (ii) Defendant withdraws from the Settlement Agreement; (iii) the Agreement, the Preliminary Approval Order, and this Order Finally Approving the Settlement do not for any reason become effective; or (iv) the Agreement, Preliminary Approval Order, and Order Finally Approving the Settlement are reversed, vacated, or modified in any material respect, then (a) any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated, including without limitation the certification of the Settlement Class and all other relevant portions of this Order, (b) the instant actions shall proceed as though the Settlement Class had never been certified, and (c) no reference to the prior Settlement Class, or any documents related thereto, shall be made for any purpose.  If the settlement does not become final in accordance with the terms of the Agreement, this Order Finally Approving the Settlement shall be void and shall be deemed vacated.  Defendant retains the right to oppose class certification if the settlement is vacated, and the doctrines of res judicata or collateral estoppel shall not be applied.

19.     Neither the Agreement, this Order Finally Approving the Settlement, nor any of their provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order or the Final Judgment and Order Finally Approving

5

the Settlement), negotiations, or proceedings relating in any way to the settlement, shall be construed as or deemed to be evidence of an admission or concession of any kind by any person, including Defendant, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce the terms of the Agreement or except as may be required by law or court order.

20.     The Court directs the Defendant to deliver the Settlement Fund to Settlement Class Counsel within 14 days of the date this order is entered. Within 10 days after receipt of the Settlement Fund, Plaintiff shall present an order dismissing the lawsuit with prejudice and without costs.

21.     The Court orders Settlement Class Counsel to hold the Settlement Fund in the firm's escrow account until the Effective Date of the Settlement Agreement and then deliver the Settlement Fund to the Administrator, less attorney's fees and costs approved by the Court, within 3 business days of the Effective Date.  In the event that the order of Final Approval is withdrawn or vacated by this Court or reversed on appeal, Settlement Class Counsel shall return the Settlement Fund to the Defendant within 3 business days.

22.     The parties designate the following as *cy pres* recipients: _____ and ⸱_ Defendant's Administrator to provide checks payable to these charities to Settlement Class Counsel for distribution.

23.     Defendant's Administrator to file an affidavit of accounting on DATE, 2009.

Dated: _____          _____
                                     Judge

6

# APPENDIX B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

JAMES BRILL, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

COUNTRYWIDE HOME LOANS, INC., a
corporation,

        Defendant.

---

Case No.  05 C 2713
(Judge Darrah)

**FINAL ORDER APPROVING SETTLEMENT**
**AND CERTIFYING SETTLEMENT CLASS**

Upon review and consideration of the Settlement Agreement dated February 16, 2006,

the evidence and arguments of counsel presented at the Fairness Hearing held on June 28, 2006,

the memoranda filed with this Court, and any objections to the Settlement, IT IS HEREBY

ORDERED and ADJUDGED as follows:

    1.     Pursuant to Federal Rule of Civil Procedure 23, the Settlement of this Action, as

embodied in terms of the Settlement Agreement dated February 16, 2006, is hereby finally

approved as a fair, reasonable, and adequate settlement of this case in light of the factual, legal,

practical, and procedural considerations raised by this case.

    2.     The definitions in the Settlement Agreement are hereby incorporated by reference

into this Order.

    3.     Solely for the purpose of Settlement and pursuant to Federal Rule of Civil

Procedure 23, the Court hereby finally certifies the following Settlement Class:

All persons and entities who in June 2004 had ownership, control, or authority over a telephone number to which Robert Brunke of Countrywide Home Loans, Inc. sent a facsimile advertisement for EQUITY LOAN BALANCE TRANSFERS, in the form attached to the Complaint as Exhibit A.

4.    The Court finds that notice previously given to Class Members in this action was the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

5.    The Court appoints Representative Plaintiff James Brill as Representative of the Settlement Class and finds that he meets the requirements of Federal Rule of Civil Procedure 23.

6.    The Court appoints the following lawyers as counsel to the Settlement Class, and finds that these counsel meet the requirements of Federal Rule of Civil Procedure 23:

> Daniel A. Edelman
> Julie Clark
> **EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
> 120 S. LaSalle St., 18th Floor
> Chicago, IL 60603
> (312) 739-4200
> (312) 419-0379 (FAX)

7.    The Court further finds, in light of the current posture of this case, and the certification of this Settlement Class, that:

a.    the Settlement Class is so numerous that joinder of all members is impracticable;

b.    there are questions of law or fact common to the Settlement Class;

c.    the claims of the Representative Plaintiff are typical of the claims of the Settlement Class that the Representative Plaintiff seeks to certify; and

d.    the Representative Plaintiff and his counsel will fairly and adequately protect the interests of the Settlement Class.

It further finds that:

2

a.    the questions of law or fact common to the members of the Settlement

Class, and which are relevant for settlement purposes, predominate over the questions

affecting only individual members; and

b.    the class action is a superior method for the fair and efficient adjudication

of this controversy.

8.    After due consideration of Representative Plaintiff's likelihood of success at trial;

the range of Representative Plaintiff's possible recovery; the point on or below the range of

possible recovery at which a settlement is fair, adequate, and reasonable; the complexity,

expense and duration of the litigation; the lack of opposition to the settlement; the state of

proceedings at which the settlement was achieved; the lack of objections; the lack of opt-outs; all

written submissions, affidavits, and arguments of counsel; and after notice and a hearing, this

Court finds that the settlement is fair, adequate and reasonable.  This Court also finds that the

financial settlement terms fall within the range of settlement terms that would be considered fair,

adequate and reasonable.  Accordingly, the Settlement Agreement should be and is approved and

shall govern all issues regarding the settlement and all rights of the Parties, including the Class

Members.  Each Class Member shall be bound by the Settlement Agreement, including the

releases and covenants not to sue in the Settlement Agreement, all of which are hereby

incorporated by reference and become part of the final judgment in these actions.

9.    Class Counsel shall comply with and implement the terms of the Settlement

Agreement.

10.    Upon consideration of Class Counsel's application for attorneys' fees and

litigation costs, the Court awards 25% of the value of all Valid Claims in aggregate, as calculated

in accordance with the Settlement Agreement, shall be payable to Class Counsel for attorney fees

3

and litigation costs. The Court further finds that payment of an incentive award to the named

plaintiff in the amount of $2,500, to be deducted from the fees and costs payable to Class

Counsel is just and reasonable.

     11.    In accordance with the Settlement Agreement, and to effectuate the Settlement,

Countrywide shall, in accordance with time frames set forth in the Settlement Agreement, cause:

     (a)    the Consideration to be disbursed to Class Members who timely submitted

a Valid Claim Form; and

     (b)    the Attorney Fee/Litigation Cost Award in paragraph 9 above to be paid to

Class Counsel to the extent provided for in the Settlement Agreement.

     Further in accordance with the Settlement Agreement, the total of items (a) and (b) of this

paragraph will be governed by paragraph 3.02 of the Settlement Agreement.

     12.    This Action and all claims against Countrywide are hereby dismissed on the

merits and with prejudice, and the Clerk is directed to enter judgment to that effect in this

Action. The judgment shall be without taxable costs to any Party.

     13.    As no Class Member has chosen to opt-out of the class, each and every Class

Member is permanently enjoined from bringing, joining, assisting in, or continuing to prosecute

against Countrywide or any Released Person (as that terms is defined in the Settlement

Agreement) any claim that was brought in this Action, or for which a release and covenant not to

sue is being given under the Settlement Agreement.

     14.    Countrywide has complied with 28 U.S.C. § 1715.

15.     This Court hereby retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement. The Court further retains jurisdiction to enforce this Order entered this day.

16.     This matter is continued to September 12, 2006 at 9:00 a.m. for status and report as to the final number of undisputed claims.

Dated: _____6/28/06_____     _____
                                                    Judge John W. Darrah

# APPENDIX C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRIDGEPORT PAIN CONTROL )
CENTER, LTD., )
 )
   Plaintiff, ) 08 C 1116
 )
   v. ) Judge Hibbler
 )
CUTERA, INC., ) Magistrate Judge Brown
and JOHN DOES 1-10, )
 )
   Defendants. )

## DECLARATION OF DANIEL A. EDELMAN

   Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

   **1.** Edelman, Combs, Latturner & Goodwin, LLC, has 7 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Michelle R. Teggelaar, Francis R. Greene and Julie Clark, and 7 associates.

   **2.** **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the author of Chapter 6, "Predatory Lending and Potential Class Actions," in Real Estate Litigation (Ill. Inst. For Cont. Legal Educ. 2008), Chapter 4-1, "Truth in Lending Act," in Illinois Causes of Action (Ill. Inst. For Cont. Legal Educ. 2008), ch. 6 of Illinois Mortgage Foreclosure Practice (Ill. Inst. For Cont. Legal Educ.2003); Predatory Lending and Potential Class Actions, ch. 5 of Real Estate Litigation (Ill. Inst. For Cont. Legal Educ.2004); co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection

1

Practices Act (Chicago Bar Ass'n 1996); author of <u>The Fair Debt Collection Practices Act: Recent Developments</u>, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994). He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

        **3.**      **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991. Decisions in which she was involved prior to joining the firm include: <u>Johnson v. Heckler</u>, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); <u>Sanders v. Shephard</u>, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); <u>Maller v. Cohen</u>, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); <u>Wright v. Department of Labor</u>, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); <u>Barron v. Ward</u>, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); <u>City of Chicago v. Leviton</u>, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); <u>Jude v. Morrissey</u>, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983). She is a member of the Northern District of Illinois trial bar.

        **4.**      **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in <u>Federal Practice Manual for Legal Services Attorneys</u> (M. Masinter, Ed., National Legal Aid and Defender Association 1989); <u>Governmental Tort Immunity in Illinois</u>, 55 Ill.B.J. 29 (1966); <u>Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations</u>, 2 Loy.Consumer L.Rep. 64 (1990), and <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

        **5.**      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** <u>Williams v. Chartwell Financial Services, LTD</u>, 204 F.3d 748 (7th Cir. 2000); <u>Hillenbrand v. Meyer Medical Group</u>, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); <u>Bessette v. Avco Fin. Servs.</u>, 230 F.3d 439 (1st Cir. 2000); <u>Large v. Conseco Fin. Servicing Co.</u>, 292 F.3d 49 (1st Cir. 2002);; <u>Carbajal v. Capital One</u>, 219 F.R.D. 437 (N.D.Ill. 2004); <u>Russo v. B&B Catering</u>, 209 F.Supp.2d 857 (N.D.IL 2002); <u>Garcia v. Village of Bensenville</u>, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.);

Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

      **6.**     **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Hernandez v. Attention, LLC, 429 F. Supp. 2d 912 (N.D. Ill. 2005); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Binder v. Atlantic Credit and Finance, Inc., 2007 U.S. Dist. LEXIS 11483 (S.D. Ind. 2007); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

      **7.**     **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002); White v. Financial Credit Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives 2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D. Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003 WL 338161 (N.D. Ill. 2003); Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006). He is a member of the Northern District of Illinois trial bar.

      **8.**     **Julie Clark** (neé Cobolovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank, 219 F. Supp.2d 935 (N.D. Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.Ill.,2002), 2003 WL 22359626 (N.D. Ill. 2003); Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co., 377 Ill. App. 3d 642; 880

N.E.2d 205 (1ˢᵗ Dist. 2007); Western Ry. Devices Corp. v. Lusida Rubber Prods., 06 C 52, 2006 U.S. Dist. LEXIS 43867 (N.D. Ill. June 13, 2006); Nautilus Ins. Co. v. Easy Drop Off, LLC, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D. Ill. June 4, 2007); Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc., 07 C 5715, 2007 U.S. Dist. LEXIS 84425 (N.D. Ill. Nov. 14, 2007) ; Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 17, 2008); Sadowski v. OCO Biomedical, Inc., 08 C 3225, 2008 U.S. Dist. LEXIS 96124 (N.D. Ill. Nov. 25, 2008).

9. **Associates**

**a.      Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude*, 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** Clark v. Experian Info. Solutions, Inc., 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004); DeFrancesco v. First Horizon Home Loan Corp., 2006 U.S. Dist. LEXIS 80718 (S.D. Ill. Nov. 2, 2006); Jeppesen v. New Century Mortgage Corp., 2006 U.S. Dist. LEXIS 84035 (N.D. Ind. Nov. 17, 2006); Benedia v. Super Fair Cellular, Inc., 2007 U.S. Dist. LEXIS 71911 (N.D. Ill. Sept. 26, 2007).

**b.      Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). **Reported Cases:** Murray v. Sunrise Chevrolet, Inc., 441 F.Supp.2d 940 (N.D. Ill. 2006); Iosello v. Leiblys, Inc., 502 F. Supp.2d 782 (N.D. Ill. 2007); Claffey v. River Oaks Hyundai, Inc., 486 F. Supp.2d 776 (N.D. Ill. 2007).

**c.      Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** Pietras v. Sentry Ins. Co., 513 F. Supp.2d 983 (N.D. Ill. 2007); Hernandez v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Sept. 25, 2007); Balogun v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 74845 (S.D. Ind. Oct. 5, 2007).

**d.      Tiffany N. Hardy** (admitted NY, DC, IL) is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001).

**e.      Zachary Jacobs** is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

**f      Rupali Shah** is a graduate of the University of Chicago (B.A. 2004) and University of Illinois College of Law (J.D. 2007).

**g      Catherine A. Ceko** is a graduate of Northwestern University (B.A. 2005) and DePaul University (J.D. *summa cum laude* 2008)

**10.** The firm also has 15 legal assistants, as well as other support staff.

**11.**     Since its inception, the firm has recovered more than $500 million for consumers.   The types of cases handled by the firm are illustrated by the following:

**12.      Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.   These include MDL-899, In re Mortgage Escrow Deposit

4

Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D.Ill. 2000); Johnstone v. Bank of America, N.A., 173 F.Supp.2d 809 (N.D.Ill. 2001); Leon v. Washington Mut. Bank, F.A., 164 F.Supp.2d 1034 (N.D.Ill. 2001); Williamson v. Advanta Mortg. Corp., 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); McDonald v. Washington Mut. Bank, F.A., 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); Metmor Financial, Inc. v. Eighth Judicial District Court, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); GMAC Mtge. Corp. v. Stapleton, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); Leff v. Olympic Fed. S. & L. Ass'n, 1986 WL 10636 (N.D.Ill. 1986); Aitken v. Fleet Mtge. Corp., 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); Poindexter v. National Mtge. Corp., 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); Sanders v. Lincoln Service Corp., 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); Robinson v. Empire of America Realty Credit Corp., 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); In re Mortgage Escrow Deposit Litigation, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

13.     The recoveries in the escrow overcharge cases alone are over $250 million. Leff was the seminal case on mortgage escrow overcharges.

14.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

15.     **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065, (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 230 F.3d 439 (1st Cir. 2000).

16.     **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

**a.**     Hidden finance charges resulting from pass-on of discounts on auto purchases. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

**b.**     Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

**c.**     Spot delivery. Janikowski v. Lynch Ford, Inc., 1999 U.S. Dist.

5

LEXIS 3524 (N.D.Ill., March 11, 1999); <u>Diaz v. Westgate Lincoln Mercury, Inc.,</u> 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); <u>Grimaldi v. Webb,</u> 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

> **d.** Force placed insurance. <u>Bermudez v. First of America Bank Champion, N.A.,</u> 860 F.Supp. 580 (N.D.Ill. 1994); <u>Travis v. Boulevard Bank,</u> 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); <u>Moore v. Fidelity Financial Services, Inc.,</u> 884 F. Supp. 288 (N.D.Ill. 1995).

> **e.** Improper obligation of cosigners. <u>Lee v. Nationwide Cassell,</u> 174 Ill.2d 540, 675 N.E.2d 599 (1996); <u>Taylor v. Trans Acceptance Corp.,</u> 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

> **f.** Evasion of FTC holder rule. <u>Brown v. LaSalle Northwest Nat'l Bank,</u> 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

> **17.** These cases also had a substantial effect on industry practices. The warranty cases, such as <u>Grimaldi,</u> <u>Gibson,</u> <u>Slawson,</u> <u>Cirone-Shadow,</u> <u>Chandler,</u> and <u>Shields,</u> resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

> **18.** **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.,</u> 753 N.E.2d 572 (Ind. Sup. Ct. 2001); <u>Williams v. Chartwell Fin. Servs.,</u> 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.,</u> 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.,</u> 202 F.R.D. 515 (E.D.Mich. 2001); <u>Van Jackson v. Check 'N Go of Ill., Inc.,</u> 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.,</u> 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.,</u> 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin,</u> 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday,</u> 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.,</u> 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.,</u> 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.,</u> 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n,</u> 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

> **19.** **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

> **a.** Phony nonfiling insurance. <u>Edwards v. Your Credit Inc.,</u> 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.,</u> 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.,</u> 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

> **b.** The McCarran Ferguson Act exemption. <u>Autry v. Northwest Premium Services, Inc.,</u> 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

6

**c.** Loan flipping. Emery v. American General, 71 F.3d 1343 (7th Cir. 1995). Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

**d.** Home improvement financing practices. Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990). Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

**e.** Arbitration clauses. Wrightson v. ITT Financial Services, 617 So.2d 334 (Fla. 1st DCA 1993).

**f.** Insurance packing. Elliott v. ITT Corp., 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

**20.** **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include Lundquist v. Security Pacific Automotive Financial Services Corp., Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); Kedziora v. Citicorp Nat'l Services, Inc., 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); Johnson v. Steven Sims Subaru and Subaru Leasing, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit Corp., 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit Mgmt., Inc., 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of America, Inc., 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

**21.** Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

**22.** **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996)

(class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

23. Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. Avila v. Rubin is a leading decision on phony "attorney letters."

24. **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, primarily as class actions. One line of cases alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. Important decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816 (7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006);Shellman v. Countrywide Home Loans, Inc., 1:05-CV-234-TS, 2007 U.S. Dist. LEXIS 27491 (N.D.Ind., April 12, 2007); In re Ocean Bank, 06 C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March 16, 2007), later opinion, 2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); Asbury v. People's Choice Home Loan, Inc., 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12, 2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); Pavone v. Aegis Lending Corp., 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray v. E*Trade Financial Corp., 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v. Home 123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise Chevrolet , Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and Murray v. Finance America, LLC, 2006 U.S. Dist. LEXIS 7349 (N.D. Ill., Jan 5, 2006). More than 15 such cases have been settled on a classwide basis.

25. **Class action procedure:** Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir.

1997); and <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

     **26.**    **Landlord-tenant:** The firm has brought a number of class actions against landlords for various matters including failing to pay interest on security deposits or commingling security deposits, breach of the warranty of habitability, improper late charges, and various violations of the CRLTO. Reported decisions include: <u>Wang v. Williams</u>,343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); <u>Onni v. Apartment Management and Investment Co.</u>, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2d Dist. 2003) (case challenging improper late charges, which later settled on a class basis for $200,000); <u>Dickson v. West Koke Mill Village P'Ship</u>, 329 Ill.App.3d 341 (4th Dist. 2002). Illustrative cases include: <u>Hale v. East Lake Management & Developmental Corp., et al.</u>, 00 CH 16139, in the Cook County Circuit Court, Judge Madden granted class certification for tenants who had not been paid their security deposit interest after the end of each twelve month rental period. The East Lake case later settled on a classwide basis for over $400,000.

     **27.**    Some of the other reported decisions in our cases include: <u>Elder v. Coronet Ins. Co.</u>, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); <u>Smith v. Keycorp Mtge., Inc.</u>, 151 Bankr. 870 (N.D.Ill. 1992); <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); <u>Armstrong v. Edelson</u>, 718 F.Supp. 1372 (N.D.Ill. 1989); <u>Newman v. 1st 1440 Investment, Inc.</u>, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); <u>Mountain States Tel. & Tel. Co. v. District Court</u>, 778 P.2d 667 (Colo. 1989); <u>Disher v. Fulgoni</u>, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); <u>Harman v. Lyphomed, Inc.</u>, 122 F.R.D. 522 (N.D.Ill. 1988); <u>Haslam v. Lefta, Inc.</u>, 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); <u>Source One Mortgage Services Corp. v. Jones</u>, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

     **28.**    Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. <u>Elder v. Coronet Insurance</u> held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

_____
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\430\pleading\MODEL Declaration of DAE w_o p 28-35_pleading.WPD